UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   3/14/2022
```

CARL BROWN,

                              Plaintiff,

        -against-

FORMER SUPT. OF GREEN HAVEN THOMAS
GRIFFIN, et al.,

                              Defendants.

19-cv-02296 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Carl Brown ("Plaintiff"), proceeding *pro se*, commenced this action on March 14,

2019, alleging violations of the Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983"), against

Acting Commissioner Anthony Annucci, Superintendent Thomas Griffin, Lieutenant Orazio

Bucolo, Lieutenant Robert Hotaling, Correctional Officer ("CO") Daniel Huttel, Sergeant Clifford

Gunsett, CO Steven Purcell, Jr., CO Daishawn Keith, Deputy Superintendent of Security Anthony

Russo, CO Robert Womacsko, Sergeant Dennis Benitez, Lieutenant Bryan Anspach, CO Damon

Ausman, CO Craig Doyle, CO Christina Lorenzo, Captain Duncan Bey, Sergeant Zikiya Reyes-

Jordan, CO Steven Purcell, Sr., Dr. Yelena Korobkova, Superintendent LaManna, CO Jeffrey

Bengim, and CO James Garcia.[1]  (ECF No. 2.)  Presently before the Court is Defendants' motion

---

[1] Two of the Green Haven employees described in the body of the SAC, Lieutenant Susan Hann and CO
Fonseca, were not served.  (ECF Nos. 56 & 67.)  In the Court's Order of Service dated May 18, 2020, it warned
Plaintiff that it was his responsibility to ensure service was made within 90 days of the date the summons was
issued.  (ECF No. 25.)  Therefore, all claims against Defendants Hann and Fonseca are dismissed pursuant to
Federal Rule of Civil Procedure 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the
court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that
defendant or order that service be made within a specified time.").

to dismiss the Second Amended Complaint ("SAC") (ECF No. 88).[2]  For the following reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from Plaintiff's SAC and the exhibits attached to Plaintiff's previous complaints[3] and are construed in the light most favorable to Plaintiff and accepted as true for purposes of this motion.

Plaintiff was housed in the Green Haven Correctional Facility ("Green Haven") from approximately 2016 to 2018.  (SAC at 4.)  Plaintiff was first housed in H-Block where CO Gunset "began to harass" him in retaliation for a 2010 settlement Plaintiff won against him and other prison officials, including CO Huttel and CO Steven Purcell.[4]  (Id.; Compl. at 31.)  CO Purcell Sr. and CO Purcell Jr. also "began to harass" Plaintiff by discussing Plaintiff's criminal case loud enough for the inmate population to hear.  (SAC at 4-5.)  CO Huttel also became involved, discussing Plaintiff's criminal history and "ousting [P]laintiff as being the son of a famous person Mr. Berry Gordy."  (Id. at 5.)  Plaintiff was eventually moved to another housing location.  (Id.)

On or around January 30, 2017, Reyes-Jordan and CO Garcia issued Plaintiff a misbehavior report that falsely stated he blurted out obscene statements.  (Id.; Compl. at 14.)  Reyes-Jordan issued the false report in retaliation for Plaintiff filing more than ten complaints against her. (Compl. at 14.)  The report was ultimately dismissed after 21 days of confinement.  (Id.)  During

---

[2] Plaintiff also filed a motion for leave to amend the complaint (ECF No. 116), but later withdrew his request (see ECF No. 128.)

[3] The Court will consider the documents attached to Plaintiff's first complaint in connection with the current motion. See Hunt v. Arthur Kill Corr. Facility, No. 11-CV-2432 (RRM)(LB), 2012 WL 7658364, at *1 n.1 (E.D.N.Y. Oct. 9, 2012) (considering documents attached to original complaint, even though "an amended complaint completely replaces the original complaint," where pro se litigant's amended complaint relied on documents but failed to attach them), report and recommendation adopted, No. 11-CV-2432 (RRM)(LB), 2013 WL 828483 (E.D.N.Y. Mar. 6, 2013).

[4] It is not clear if the settlement was against CO Steven Purcell Sr. or CO Steven Purcell Jr.

the hearing proceeding, Bucolo falsely stated Plaintiff did utter the statements he was accused of. (SAC at 5.)  Reyes-Jordan then directed Garcia to "assault" Plaintiff by turning off his cell's water and isolating him.  (*Id*.)  Plaintiff was then moved to another housing location.  (*Id*.)

CO Keith took Plaintiff's inmate identification card and burned it, "sexually assaulted" Plaintiff twice, and "verbally harassed" Plaintiff with "threats of violence."  (*Id*.)  Plaintiff was then moved to a new housing location.  (*Id.*)

At his new housing location, Reyes-Jordan ordered Plaintiff to lock in his cell, and then kicked Plaintiff "over the inmate property locker" and re-injured his arm, which was already in a sling.  (*Id*.)  Medical personnel were notified, and the matter was documented.  (*Id*.)  Defendant Hotaling then issued a report against Plaintiff for issuing threats.  (*Id*. at 6.)  Plaintiff was then moved to a new housing location.  (*Id*.)

From February through May of 2018, CO Womacsko and CO Doyle began to "harass" Plaintiff by "shouting out matters of [P]laintiff's case and posting [P]laintiff's picture" and "sexually assault[ing]" him on two occasions.  (*Id*.)  Plaintiff alleges that these assaults were reported to Defendant Anspach who "failed to act."  (*Id*.)  Plaintiff's cell was then set on fire while he "was outside in the facility yard."  (*Id*.)  Plaintiff alleges he witnessed CO Gunset, who was the subject of a complaint, "toss a [lit] object into the cell, setting it ablaze."  (*Id*.)  He alleges in an inmate grievance complaint that CO Huttel ordered his cell to be set on fire in retaliation for his 2005 lawsuit.  (Compl. at 22.)  Plaintiff was then moved to a new housing location.  (SAC at 6.)

CO Lorenzo and CO Ausman began "harassing" Plaintiff "with the same line of abuse," and Plaintiff filed complaints including a "sexual harassment" complaint against Ausman.  (*Id*.)  Plaintiff's new cell was again set on fire, which caused Plaintiff to be moved into protective custody.  (*Id*.)  Plaintiff alleges that CO Bengim "sexually assaulted" him on June 6, 2017 during

a "pat frisk[]."  (*Id*.)  Bengim then issued a "false" misbehavior report in retaliation.  (*Id*.)  On April 17, 2017, Plaintiff filed an inmate grievance complaint that alleges Bengim sexually and verbally harassed him by "put[ting] his hand on [his] ass 2 time and put[ting] his hand on [his] dick 1 time", stating that he likes boys, and calling him "rapo."  (Compl. at 23.)  Similarly, on July 2, 2017, Plaintiff wrote multiple letters, including to Griffin, stating he was assaulted by Bengim when he "grabbed [his] crotch and ran his fingers up and down the crack of [his bottom]" and stated "[h]ow do you . . . like it?"  (*Id*. at 12-13.)

Plaintiff was moved to the Protective Custody Unit based upon the harassment and his cell being set on fire twice.  (SAC at 6.)  Here, CO Ausman began to tell the other inmates in the Unit that Plaintiff was racist and encouraged other inmates to assault Plaintiff.  (*Id*.)  On December 1, 2018, Plaintiff was sucker punched by an inmate, beaten by staff, and sprayed with pepper spray while handcuffed.  (*Id*.)  Plaintiff alleges Benitez Jr. was advised of this harassment and the assaults and "failed to act," and allowed Plaintiff to be assaulted and have his property destroyed.  (*Id*.)  Plaintiff was then moved to the facility's special housing unit.  (*Id*.)

Dr. Korobkova continuously denied Plaintiff medical attention after the assaults, discontinued prescribed items necessary to maintain mobility, and failed to adequately record and report issues of concern.  (*Id*. at 7.)  Plaintiff alleges he sent multiple letters to Defendants Russo, LaManna, Griffin, Bey, and Annucci detailing these events.  (*Id*.)  On May 5, 2018, Plaintiff sent a letter to Commissioner Annucci that includes several allegations of abuse from CO Womacsko, including: (i) on May 4, 2018, he moved his hand in an "upward chopping motion" onto Plaintiff's primate parts; (ii) on April 15, 2018, he placed a picture of Plaintiff on his workstation with the label "rapo"; (iii) rubs his crotch area on passes before handing them to Plaintiff; and (iv) on various dates has called him racial slurs and "rapo."  (Compl. at 88-90.)

4

Plaintiff filed suit on March 14, 2019.  (ECF No. 2.)  Plaintiff filed the First Amended Complaint on August 19, 2019 (ECF No. 13), and the Second Amended Complaint on October 21, 2019 (ECF No. 17.)  On December 4, 2020, Defendants were granted leave to file a motion to dismiss (ECF No. 63), which was filed on May 18, 2021 (ECF No. 88.)  Plaintiff filed oppositions on March 5, 2021 (ECF No. 73), and May 6, 2021 (ECF Nos. 85 & 86.)  Defendants filed a reply memorandum on May 18, 2021 (ECF No. 90.)  Plaintiff was then granted leave to file a further opposition on June 29, 2021 (ECF No. 96), which was received by the Court on September 30, 2021 (ECF Nos. 119 & 120.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555).

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555.  A motion to dismiss

will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Further, courts must interpret a *pro se* plaintiff's pleadings "to raise the strongest arguments that they suggest." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("Section 1983 . . . is not itself a source of substantive rights . . . [i]t merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotation marks omitted). To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived

the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013).

Reading the SAC liberally, Plaintiff alleges claims pursuant to Section 1983 for excessive force, sexual assault, failure to protect, verbal harassment, deliberate indifference to medical needs, supervisory liability, destruction of property, and retaliation. The Court examines each claim separately below.

## I.      Excessive Force

Plaintiff's SAC alleges that (i) Reyes-Jordan ordered CO Garcia to "assault" him; (ii) Reyes-Jordan kicked Plaintiff; (iii) "staff" beat Plaintiff and pepper sprayed him while he was handcuffed; and (iv) CO Womacsko moved his hand in an "upward chopping motion" onto his private parts.

The Eighth Amendment guarantees freedom from "cruel and unusual punishment." U.S. Const. amend. VIII. This includes depriving prisoners of their "basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). To state an Eighth Amendment excessive force claim, an inmate must allege that: (1) "the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions," and (2) "the defendant acted with a subjectively sufficiently culpable state of mind," which is "characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Harris v. Miller*, 818 F.3d 49, 63–64 (2d Cir. 2016). The test for wantonness "is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 63 (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)).

This context-specific standard focuses on the harm done given "contemporary standards of decency." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  Therefore, even if a plaintiff's injuries are minimal, a defendant may be liable if he or she applied force "maliciously and sadistically," as "contemporary standards always are violated" in such circumstances. *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999).  Nevertheless, "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Lebron v. Mrzyglod*, No. 14-CV-10290 (KMK), 2019 WL 3239850, at \*14 (S.D.N.Y. July 18, 2019).

Here, Plaintiff has successfully alleged an excessive force claim against Reyes-Jordan. Plaintiff alleges Reyes-Jordan kicked him, causing him to reinjure injuries he was already suffering from.  Viewing the facts in the light most favorable to Plaintiff, the Court holds that this allegation is sufficient to survive a motion to dismiss.  *See Sanchez v. Velez*, No. 08 Civ. 1519(NRB), 2009 WL 2252319, at \*3 (S.D.N.Y. July 24, 2009) (holding the plaintiff's allegations that one defendant used excessive force when he pushed him into the wall, hurt his face, and kicked his legs was sufficient for an excessive force claim under the Eighth Amendment).  First, the conduct was sufficiently serious, as Plaintiff was already injured, and the kick caused him reinjuries.  Second, the allegations show that Reyes-Jordan acted with a sufficiently culpable state of mind, as the allegations do not infer any kind of good-faith effort to maintain order or discipline.

However, Plaintiff's other allegations are dismissed.  First, he states that Reyes-Jordan ordered Garcia to "assault" him, and that he turned off his cell water and isolated him for the "assaults", but he fails to include specific facts explaining what Garcia allegedly did to him.  The Court cannot evaluate this conclusory allegation under the excessive force standard.  *See Jean-*

*Baptiste v. Froehlich*, No. 3:21CV01482 (SALM), 2022 WL 94407, at *2 (D. Conn. Jan. 10, 2022) (holding the allegation that the defendants "caused assault and battery to [the plaintiff]" was wholly conclusory). Second, Plaintiff alleges that "staff" beat him and pepper sprayed him while he was handcuffed. This is also insufficient, as Plaintiff fails to allege which specific defendants participated in this alleged assault. Third, Plaintiff alleges that CO Womascko moved his hand in an "upward chopping motion" onto his primate parts four times. This allegation is too vague for the Court to hold he suffered a sufficiently serious injury that can be considered excessive force. *See Tuttle v. Carroll Cty. Det. Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012) (affirming that plaintiff's "bare-bones allegation that [a] female deputy *grabbed* his privates and *squeezed them really hard*" was simply too subjective and vague to state an excessive-force claim).

Accordingly, Plaintiff's excessive force claims are dismissed against all Defendants except Reyes-Jordan.

## II.    Sexual Assault

Plaintiff's SAC alleges six sexual assaults: (i) Defendant Keith "sexually assaulted [P]laintiff twice"; (ii) Defendants Womacsko and Doyle "sexually assaulted [P]laintiff on two occasions"; (iii) Plaintiff filed a sexual harassment complaint against Defendant Ausman; and (iv) Defendant Bengim "sexually assaulted" Plaintiff during a "pat frisk[]."

"[S]exual abuse by a corrections officer can give rise to an Eighth Amendment claim" when the alleged conduct "serves no penological purpose *and* is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate[.]"  *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) (emphasis added). Even a "single incident of sexual abuse, if sufficiently severe or serious, may violate" the inmate's rights. *Id.* The critical inquiry "is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast

whether it [was] taken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257–58 (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).  To determine the purpose of an officer's conduct, "the Second Circuit has looked to the timing of the frisk, the comments made during the frisk, and subsequent comments made by the officers." *Shepherd v. Fisher*, No. 08-CV-9297 (RA), 2017 WL 666213, at *18 (S.D.N.Y. Feb. 16, 2017) (citing *Crawford*, 796 F.3d at 258–59).

Here, Plaintiff has failed to adequately allege sexual assault against Defendants Keith, Doyle, Womacsko and Ausman.  Plaintiff pleads in a conclusory fashion that he was "sexually assaulted" by these Defendants, but he fails to allege *how* he was sexually assaulted.  Without these facts, the Court cannot determine if the officers' alleged conduct was part of their official duties or taken to gratify them and humiliate Plaintiff.

However, Plaintiff has pled adequate claims against Bengim.  Plaintiff alleges that Bengim "grabbed [his] crotch and ran his fingers up and down the crack of [his bottom]" and stated "[h]ow do you . . . like it?"  It is clear that these alleged actions would serve no penological purpose, and the alleged statement makes it plausible that the actions were undertaken to gratify the officer or humiliate Plaintiff. *See Yunus v. Jones*, No. 9:16-CV-1282 (GTS/ATB), 2019 WL 5196982, at *9–12 (N.D.N.Y. June 21, 2019) (holding a reasonable jury could conclude that the defendants' actions during pat frisks, where they stuck fingers into the plaintiff's rectum and threatened to rape him, were not good faith efforts to maintain discipline).

Accordingly, Plaintiff's sexual assault claims are dismissed against all Defendants except Bengim.

### III.    Failure to Protect

The Eighth Amendment mandates that prison officials ensure the "reasonable safety" of inmates. *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994).  This requirement includes a general

10

"duty . . . to protect prisoners from violence at the hands of other prisoners." *Id*. at 833.  To raise a cognizable claim for failure to protect, "an inmate must satisfy a two-pronged test" demonstrating that (1) "he is incarcerated under conditions posing a substantial risk of serious harm"; and (2) "prison officials acted with 'deliberate indifference' to the inmate's 'health or safety.'" *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 336 (S.D.N.Y. 2015) (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference exists where a prison official "knows that [an] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Here, Plaintiff alleges that (i) CO Purcell Sr. and CO Purcell Jr. would discuss his criminal case loud enough for the inmate population to hear; (ii) CO Huttel would discuss his criminal history and outed him as the son of Berry Gordy; (iii) CO Womacsko and CO Doyle would shout out details of his case and post his picture; and (iv) CO Ausman told other inmates Plaintiff was racist and encouraged them to assault him.  "[P]urposedly inform[ing] other inmates of the nature of [the plaintiff's] charges in order to incite violence against him" and "with no penological purpose" satisfies both prongs of the deliberate indifference test. *Mirabella v. O'Keenan*, No. 15-CV-142S, 2018 WL 3659526, at *3 (W.D.N.Y. Aug. 2, 2018).  Construing the facts in the light most favorable to Plaintiff, and acknowledging that "inmates who are convicted of [sex] crimes are more likely to be the victim of inmate-on-inmate violence", *id*., the Court holds that Plaintiff has adequately pled failure to protect claims against Defendants Purcell Sr., Purcell Jr, Huttel, Womacsko, and Doyle.

Further, Ausman telling other inmates that Plaintiff is a racist would create a substantial risk of harm that he be injured or attacked, which Ausman disregarded, and clearly does not have any kind of penological interest. *See Medina v. Whitehead*, No. 3:13-CV-885 (VLB), 2014 WL

11

3697886, at *2 (D. Conn. July 24, 2014) (finding allegations that defendant told other inmates that plaintiff was a pedophile and a snitch were sufficient to demonstrate that defendant "was aware of the source of the harm to which [plaintiff] had been subjected" and sufficient "to state a claim for failure to protect").   Therefore, Plaintiff's claim against Ausman also survives.   However, Plaintiff's allegations involving his supposed famous father do not rise to the level of deliberate indifference, as Plaintiff fails to show how this information would create a substantial risk of harm.

Accordingly, Defendants' motion to dismiss these claims is denied.

## IV.    Verbal Harassment

Throughout Plaintiff's SAC, he alleges that he was "harass[ed]" by various Defendants.  A review of the materials submitted with Plaintiff's Complaint indicates that this alleged harassment generally consists of calling Plaintiff names, including "Homo" and "Rapo."

Generally, "verbal harassment, standing alone, does not amount to a constitutional deprivation[.]"  *Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010).   While the Second Circuit has recognized that harassment that causes an inmate to suffer "psychological pain" may constitute an "appreciable injury," *Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015), this generally does not occur where the plaintiff does not allege "emotional or psychological harm or pain."   *Negron v. Matthews*, No. 3:17cv1042(SRU), 2019 WL 1298558, at * (D. Conn. Mar. 21, 2019).

Here, Plaintiff has alleged no more than name-calling, which is insufficient to constitute a constitutional violation.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000) ("[R]udeness and name-calling does not rise to the level of a constitutional violation.")  This is true even where the verbal harassment includes homophobic and racial slurs. *See Matthews v. Barq*, No. 9:18-CV-855 (TJM/CFH), 2021 WL 1582255, at *14 (N.D.N.Y. Jan. 12, 2021) (holding the plaintiff's allegations that he was called homophobic epithets did not consist of constitutional violations as

they were not accompanied by any "physical abuse or other unlawful actions"); *Bennett v. Fletcher*, No. 9:17-CV-849 (GTS/CFH), 2020 WL 872491, at *10 (N.D.N.Y. Jan. 16, 2020), *report and recommendation adopted*, *Bennett v. Jiguere*, No. 9:17-CV-0849 (GTS/CFH), 2020 WL 871156 (N.D.N.Y. Feb. 21, 2020) (dismissing racial discrimination claim where the defendant was alleged to have used racial slurs but there were no indications that they were made in connection with any physical injury).

Accordingly, Plaintiff's allegations of harassment are dismissed.

## V.      Deliberate Indifference to Medical Needs

Plaintiff next alleges Dr. Korobkova was deliberately indifferent to his medical needs.  The government is obligated to provide adequate medical care to incarcerated inmates, and the failure to do so is a violation of the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). In order to make a claim of medical indifference, a prisoner must show that there is: (1) an objectively serious medical need and (2) subjectively deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind.  *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000).  The subjective standard for deliberate indifference is essentially criminal recklessness: the official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  Therefore, "the defendant's belief that his conduct poses no serious harm . . . need not be sound as long as it is sincere."  *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006).

Here, Plaintiff alleges that Korobkova "continuously denied plaintiff medical attention after being assaulted by staff" . . . discontinued medically prescribed items and permitted items necessarily used to maintain mobility" and "fail[ed] to adequately record and report major issues of concern."  (SAC at 7.)  Plaintiff's allegations fail under both prongs of the medical indifference

test. First, Plaintiff has failed to allege that he has an objectively serious medical need, as he fails to describe exactly what ailments he has that require treatment, or what medical items he needs for mobility. *See Browne v. Pillai*, No. 3:15-cv-00097 (JAM), 2015 WL 1004378, at *3 (D. Conn Mar. 6, 2015) ("I cannot determine on the basis of plaintiff's allegations whether plaintiff suffers from a serious medical need, because plaintiff does not describe his injury in the complaint."); *June v. Blair,* No. 9:09-CV-323 (FJS/TWD), 2012 WL 1048463, at *15 (N.D.N.Y. Mar. 28, 2012) ("Since the Court does not know what Plaintiff suffered from or for how long, it is impossible to determine whether Plaintiff suffered from a sufficiently serious medical condition to support a deliberate indifference cause of action."). Second, Plaintiff fails to allege Korobkova acted with deliberate indifference as he fails to allege what she knew about his medical disorders, and what exactly she failed to do. *See Salahuddin*, 467 F.3d at 280 ("This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result.").

Accordingly, Plaintiff's deliberate indifference claim is dismissed.

## VI. Supervisory Liability

Plaintiff next appears to be alleging supervisory liability against the Defendants he sent letters and complaints to, including Anspach, Benitez Jr., Russo, LaManna, Griffin, Bey, and Annucci. However, "[i]t is well settled that . . . to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann.* 983 F.3d 609, 618 (2d Cir. 2020) (quoting

14

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Accordingly, here, to hold the officials liable, Plaintiff must allege that each individual Defendant meets all elements required for a Section 1983 claim.

Here, Plaintiff alleges that, "while [he was] being harassed and subjected to cruel and unusual punishment . . . letters and complaints were filed to offices of . . . DOCCS Administrative personnel whom failed to act accordingly . . . ."  (SAC at 7.)  Plaintiff then lists Russo, LaManna, Griffen, Bey, and Annucci and the dates he sent letters to them.  (*Id*. at 9-10.)  Plaintiff also alleges to have filed inmate grievance complaints about several topics.  (*Id*. at 10.)  However, Plaintiff has not alleged that any of the listed supervisory Defendants ever personally participated in any of the alleged constitutional violations.  *See Smart v. Annucci*, No. 19-CV-7908 (CS), 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) ("That [the defendants] failed to act on Plaintiff's complaints . . . cannot support the inference that these Defendants, through '[their] own individual actions, [have] violated the Constitution.'") (quoting *Tangreti*, 983 F.3d at 615).  Therefore, Plaintiff's claims fail.

Accordingly, Plaintiff's supervisory liability claims are dismissed.

## VII.    Destruction of Property

To the extent Plaintiff is attempting to state a claim for deprivation of property in violation of the Fourteenth Amendment against CO Keith, this claim fails.  Deprivation or destruction of property, even when intentionally done, is not cognizable under the Fourteenth Amendment where there are adequate state-provided post deprivation remedies.  *See Hudson v. Palmer*, 468 U.S. 517, 536 (1984) (holding that intentional destruction of the inmate's property "did not violate the Fourteenth Amendment").  "New York State. . . provides inmates with a post-deprivation remedy through the Court of Claims." *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 361 (S.D.N.Y. 2010).  As a matter of law, Plaintiff cannot state such a due process claim.  Further, if Plaintiff is attempting to assert such a claim through the Eighth Amendment instead, the claim still fails.

Plaintiff does not demonstrate that the deprivation resulted in any injury, and even if he had, the deprivation of his identification card does not amount "to a denial of 'the minimal civilized measure of life's necessities.'" *Bridgewater*, 698 F. Supp.2d at 361 (denying plaintiff's claims for property deprivation via the Eighth Amendment when "trimmer and headphones" were taken from him) (quoting *Branham v. Meachum*, 77 F.3d 626, 630–31 (2d Cir. 1996)).

Accordingly, Plaintiff's destruction of property claim is dismissed.

## VIII.   Retaliation

Plaintiff next alleges retaliation claims against multiple Defendants for filing false misbehavior reports and setting his cell on fire after he won a settlement in a previous lawsuit and filed inmate grievances.

To state a First Amendment retaliation claim that survives a motion to dismiss, a plaintiff must allege: "(1) the plaintiff engaged in speech or conduct that was protected by the First Amendment; (2) the defendant was aware of that activity; (3) the defendant took adverse action against the plaintiff; and (4) there was a causal connection between the protected speech and the adverse action." *Booker v. Griffin*, No. 16-CV-0072 (NSR), 2019 U.S. Dist. LEXIS 96867, at *14 (S.D.N.Y. June 7, 2019) (citing *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)).

The filing of grievances and complaints as well as the filing of a lawsuit are all constitutionally protected activity. *See Coleman v. Cuomo*, No. 9:18-CV-0390 (MAD/CFH), 2019 WL 6829613, at *10 (N.D.N.Y. Dec. 13, 2019) ("It is well settled that the filing of a lawsuit is constitutionally-protected activity."); *Perkins v. Perez*, No. 17-CV-1341(KMK), 2019 WL 1244495, at *14 (S.D.N.Y. Mar. 18, 2019) ("Plaintiff engaged in protected speech by writing a letter of complaint to Perez"). To qualify as an "adverse action," retaliatory conduct must be of a

kind that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Zelnik v. Fashion Inst. Of Tech*., 464 F. 3d 217, 225 (2d Cir. 2006).

Causal connection can be more difficult.  It requires a claimant to prove that an adverse action relates to the protected First Amendment activity—that is, a claimant must present evidence from which a jury could conclude that the protected First Amendment activity was "a substantial or motivating factor" in the prison official's adverse action against him or her.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  It can also be established indirectly, through a showing of close temporal proximity between the protected activity and the adverse employment action.  *See De Cintio v. Westchester Cnty. Med. Ctr*., 821 F.2d 111, 115 (2d Cir. 1987) ("Proof of causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment . . . or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct . . . or directly through evidence of retaliatory animus directed against a plaintiff by the defendant.").

Although Plaintiff identifies adverse actions taken against him, including his allegedly retaliatory and unjustified misbehavior report and confinement, Plaintiff fails to plausibly allege that many of the Defendants took the adverse actions against him because of any protected activity. Plaintiff alleges that CO Huttel and CO Gunset retaliated against him for filing his previous lawsuit by setting his cell on fire and ordering other officers to harass Plaintiff.  However, Plaintiff's previous lawsuit was filed in 2005 and the settlement was reached in 2010, both years before Huttel and Gunset's alleged retaliation.  *See Dhar v. City of N.Y.*, 655 F. App'x 864, 866 (2d Cir. 2016) ("the [temporal] proximity must be 'very close.'").  Therefore, Plaintiff has failed to show a causal connection.

17

Plaintiff also claims that CO Bengim filed a false misbehavior report against him in retaliation, after he sexually assaulted him.  However, this allegation does not include speech or conduct that is protected by the First Amendment, as Plaintiff was allegedly the victim of a sexual assault.  Plaintiff does not claim that he took any protected activities in response, like filing a complaint or reporting CO Bengim.  Therefore, this claim is insufficient.

Additionally, while Plaintiff alleges Garcia and Bucolo filed false misbehavior reports against him, he does not allege why these false reports were filed and in retaliation for what specific protected activity.  These Defendants were not involved in Plaintiff's settlement[5], and the SAC does not allege that Plaintiff made any complaints regarding these Defendants before they allegedly retaliated.  Therefore, Plaintiff fails to state a claim that these Defendants retaliated against him.

However, Plaintiff does allege that Reyes-Jordan issued a false misbehavior report after he filed more than ten complaints against her.  Construing the facts in the light most favorable to Plaintiff, the Court holds that this is a sufficient connection between Plaintiff's speech and the adverse action.

Accordingly, Plaintiff's retaliation claim against Reyes-Jordan survives, but his claims against Gunset, Garcia, and Bucolo are dismissed.

## IX.    Qualified Immunity

Lastly, Defendants argue that they are protected by qualified immunity for the supervisory liability, deliberate indifference to medical needs, and harassment claims.  Here, the claims that have not been dismissed include the excessive force and First Amendment retaliation claims against Reyes-Jordan, the sexual assault claim against CO Bengim, and the failure to protect claims

---

[5] Plaintiff does note that Bucolo was initially named as a defendant but dismissed before the settlement was reached.

against CO Purcell Sr., CO Purcell Jr., CO Huttel, CO Womacsko, CO Doyle, and CO Ausman. As Defendants are not arguing they are entitled to qualified immunity for these claims, the Court will not address this argument at this time.

### X.     Leave to Amend

Generally, pro se plaintiffs are allowed an opportunity to amend their complaint before the Court will dismiss it with prejudice. *Owens v. N.Y.C. Dep't of Sanitation*, No. 11-CV-8297(ALC), 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013) ("[A] court should grant leave to amend [to a pro se litigant] at least once before dismissing [a complaint] with prejudice"); *Breer v. Maranville*, No. 12-CV-0053, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012) ("The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotation marks omitted). Though this Court has already afforded Plaintiff more than one opportunity to amend his complaint, the Court will grant Plaintiff one more chance. The Court emphasizes that, to the extent that Plaintiff elects to file a Third Amended Complaint, he should bear in mind that the Third Amended Complaint will replace not supplement his previous complaints so any claims, facts, or attachments that Plaintiff wishes the Court to consider going forward must be within or attached to the Third Amended Complaint. This means that his previous complaints and other filings will no longer be the operative documents containing his pleadings and exhibits—everything that is essential must be contained in or attached to the Third Amended Complaint.

Separately, the Court advises Plaintiff that he should strive towards producing an accessible, concise, and simple statement of his claims. At this point in the litigation, Plaintiff is not required to provide evidence to prove his claims, instead he should focus on including factual

allegations in the complaint that allege plausible claims for relief.  Recognizing the apparent challenges Plaintiff has faced collecting his exhibits and providing them all in one single filing, the Court will afford Plaintiff a longer than usual deadline (60 days) to file his Third Amended Complaint.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Defendants' motion to dismiss is GRANTED in part and DENIED in part.  The surviving claims include the excessive force and First Amendment retaliation claims against CO Zikiya Reyes-Jordan, the sexual assault claim against CO Jeffrey Bengim, and the failure to protect claims against CO Steven Purcell Sr., CO Steven Purcell Jr., CO Daniel Huttel, CO Robert Womacsko, CO Craig Doyle, and CO Damon Ausman.  Plaintiff is granted leave to file a Third Amended Complaint as to any claims that have not been dismissed with prejudice.  If he chooses to do so, Plaintiff will have until May 16, 2022 to file a Third Amended Complaint consistent with this order.  Plaintiff is advised that the Third Amended Complaint will replace not supplement the Second Amended Complaint so any claims he wants to pursue must be included in or attached to the Third Amended Complaint.  An Amended Civil Rights Complaint form is attached to this Order.  Defendants are then directed to answer or otherwise respond by May 31, 2022.

If Plaintiff fails to file a Third Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice.  If no Third Amended Complaint is timely filed, Defendants must answer the remaining claims against them on or before May 31, 2022.  Plaintiff will also have until May 25, 2022 to serve Lieutenant Susan Hann and CO Fonseca if he wishes to proceed with his claims against them.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 93 & 95. The Clerk is also respectfully directed to mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF, and to file proof of service on the docket.

Dated: March 14, 2022                                         SO ORDERED:
       White Plains, New York

                                              NELSON S. ROMÁN
                                      United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____
(Include case number if one has been assigned)

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other: _____

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                 Middle Initial              Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                               State                    Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

## V.     STATEMENT OF CLAIM

Place(s) of occurrence:   _____

Date(s) of occurrence:   _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.


Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.


| Dated | Plaintiff's Signature |
|---|---|

| First Name | Middle Initial | Last Name |
|---|---|---|

| Prison Address |
|---|

| County, City | State | Zip Code |
|---|---|---|


Date on which I am delivering this complaint to prison authorities for mailing: _____